IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

DAVID TUCKER,
    Plaintiff,

VS.

VIRGINIA WILLIAMS, et al.,
    Defendants.

Civil Action File No.
7 : 09-CV-67 (HL)

## **RECOMMENDATION**

Presently pending in this *pro se* prisoner 42 U.S.C. § 1983 action are two motions for summary judgment filed by the defendants (Docs. 27 and 38). The motion at Doc. 27 was filed by defendants Williams, Griffin, Story, and Atkinson. The motion at Doc. 38 was filed by defendant Brown. Plaintiff was advised of the filings of the motions and the consequences of failing to respond thereto (Docs. 35 and 42). However, plaintiff has failed to file any response to the motions, and his mail is being returned as undeliverable. (Docs. 26, 36, and 43).

In his unverified complaint, plaintiff states that while he was a pretrial detainee housed at the Thomas County Jail, defendants, officials at the Thomas County Jail, violated his constitutional rights as follows:

(1) Plaintiff claims that Virginia Williams opened his legal mail while he was not present.

(2) Plaintiff claims that he has been retaliated against for filing grievances. Plaintiff claims that Officer Story is the individual who strip-searched him and "shook down" his cell because he filed a grievance.

(3) Plaintiff claims that he has been denied medical treatment. Specifically, plaintiff states

that he suffered a severe asthma attack and was denied treatment; that he was denied treatment for a severe cold; that he was prescribed improper medication by Dr. Brown. Plaintiff also alleges that Officer Griffin and Officer Atkinson placed him in lock down because he complained of a "badly abscessed tooth." Plaintiff states that these officers forced him to "remain in the hole" with no medication.

In determining a summary judgment motion, the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Welch v. Celotex Corp.*, 951 F.2d 1235 (11th Cir. 1992)(citing *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). However, once the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

When the nonmoving party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the nonmoving party's claim, or by pointing to specific portions of the record which demonstrate that the nonmoving party cannot meet its burden of proof at trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606-608 (11th Cir. 1991).

The existence of material disputed facts will not defeat summary judgment in favor of a public official, however, when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure

of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23, 106 S.Ct. at 2552. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

**Motion for Summary Judgment (Doc. 27)**

*Defendant Storey*

Plaintiff claims that, at 8:30 p.m. on May 22, 2009, he requested a grievance form from an officer and his request was denied. (Doc. 1; p. 4.) Later that night officers conducted a search of cells 20, 21, 22 and 23 in Pod B-4. At the time of the search, plaintiff was an inmate of cell 21 and his cell was presumably searched. (Doc. 34, Williams Aff., ¶ 8.) Plaintiff claims that this search was in retaliation for his having requested a grievance form earlier that evening.

The Eleventh Circuit has made it clear that an inmate may maintain a cause of action against prison administrators who retaliate against him for filing grievances related to the conditions of his confinement. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2009). "To prevail, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Id.*

The causal connection inquiry asks whether the defendants were subjectively motivated to discipline because the prisoner complained of some of the conditions of his confinement. *Smith* at 1278; *Thaddeus-X v. Blatter,* 175 F.3d 378, 399 (6th Cir.1999). The Eleventh Circuit followed the reasoning in *Thaddeus-X* by finding that most courts resolve this subjective motivation issue under the *Mt. Healthy* burden-shifting formula. *Smith, supra* at 1278. See generally *Mt. Healthy City Sch.*

3

*Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Under the *Mt. Healthy* formula,

[o]nce the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on [his motion for judgment as a matter of law or prior to trial on] summary judgment.

*Thaddeus-X,* 175 F.3d at 399 (citation omitted); *Smith* at 1278.

Williams stated in her affidavit that officers perform random cell searches at the Jail approximately two to three times a week. (Doc. 34, Williams Aff.) The log maintained by the Jail shows that, at approximately 10:30 p.m. on May 22, 2009, officers searched cells 20, 21, 22 and 23 in Pod B-4 of the Jail. On that day, plaintiff was being housed in cell 21. (Doc. 34, Williams Aff.)

Storey was working at the Jail on the night of May 22, 2009. (Doc. 33, Storey Aff.) Although Storey does not specifically recall participating in a search that night, he stated that it would have been typical for him to assist with searches of inmate cells. Storey further stated that random searches of inmate cells are conducted by correctional officers on a routine basis and those searches are ordered by the officer who is in charge of the Jail when the search takes place. It is that officer who decides when the search will take place and the cells to be searched. No other officer is authorized to initiate random searches of inmate cells. Storey testified that he was not the officer in charge on the night in question and, therefore, he was not authorized to initiate random searches, did not initiate the search that forms the basis of plaintiff's claim, and had no input regarding the cells that were to be searched on that night. In addition, Storey states that, at the time he engaged in any search of plaintiff's cell, Story was unaware of plaintiff requesting a grievance form or filing a grievance. (Doc. 33, Storey Aff.)

All plaintiff has provided is his unsupported assertion that his request for a grievance resulted

4

in his cell being searched. In the face of the affidavits provided by defendants, this claim against defendant Storey must fail as there is no genuine issue as to any material fact.

*Defendants Griffin and Atkinson*

In his amended complaint, plaintiff states that he requested medical treatment for an abscessed tooth from defendant Griffin on June 12, 2009. Plaintiff states that Griffin ignored his request, and that defendant Atkinson later placed him in segregation without medical treatment. (Doc. 10).

The record shows that a Prisoner Medical Request Form was submitted on behalf of plaintiff on June 11, 2009. (Doc. 32, Brown Aff., Exh. E.) According to that request, plaintiff was complaining of a bone sticking through his right jaw. On the morning of June 12, 2009, Officer Sonja Bradley was passing out medication to the inmates of Pod B4. (Doc. 30, Atkinson Aff.) At some point, Bradley asked Atkinson if plaintiff had taken his medication and Atkinson posed the same question to plaintiff. In response, plaintiff told Atkinson, "it's in my mouth you mother fucker." Atkinson then instructed plaintiff to quit cursing, but plaintiff continued to do so and told Atkinson that he, "had something for (Atkinson) when he (Atkinson) returned." As a result of that exchange, plaintiff was placed on restrictions. (Doc. 30, Atkinson Aff.)

Plaintiff was seen later that same day by Dr. Brown. Dr. Brown examined plaintiff and noted that he had no broken teeth, but did have a slight swelling of the right side of his face. (Doc. 32, Brown Aff.) Plaintiff also reported tenderness of several teeth. As a result of plaintiff's complaints, Dr. Brown issued a prescription for Cleocin (also known as Clindamycin) to treat a possibly abscessed tooth. (Doc. 32, Brown Aff.) The records maintained by the Jail demonstrate that plaintiff was given Clindamycin three times a day from June 15, 2009, until this prescription ran out on June 25, 2009. (Doc. 31, Bradley Aff.)

On June 19, 2009, plaintiff was again seen by Dr. Brown so that Dr. Brown could check on his

medical condition. (Doc. 32, Brown Aff.) During that visit, Dr. Brown noted that plaintiff had a sensitive molar. As a result, Dr. Brown issued a prescription for Ora-gel to treat plaintiff's tooth pain. (Doc. 32, Brown Aff.) Thereafter, Ora-gel was obtained from a pharmacy and presumably delivered to plaintiff. (Doc. 31, Bradley Aff.)

The evidence submitted by defendants shows that plaintiff's medical needs were addressed on the same day he complained he was ignored. Plaintiff's complaint is unverified, and he has failed to otherwise counter the medical and other evidence submitted by defendants; therefore, his claims against Griffin and Atkinson must fail.

*Defendant Williams*

Plaintiff complains that defendant Williams opened his legal mail without his permission and outside his presence in violation of his constitutional rights.

In *Al-Amin v. Smith,* 511 F.3d 1317, (11th Cir. 2008), the Eleventh Circuit recently reiterated that a prisoner's constitutional right of access to the courts requires that incoming legal mail from his attorneys, properly marked as such, may be opened only in the inmate's presence and only to inspect for contraband, *Id*. at 1325, noting, however, that the Supreme Court has "clarified that 'actual injury' is a constitutional prerequisite to an inmate's access-to-courts claim." *Id.* at 1332, citing *Lewis v. Casey*, 518 U.S. 343, 349 (1996). Therefore, "prison officials' actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action." *Id.* In other words, no constitutional violation occurs if the inmate is not harmed in some way as a result of his legal mail being opened outside of his presence. "In order to show actual injury, a plaintiff must provide evidence of such deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials." *Id.*

6

Williams states in her affidavit that, "[w]ith the exception of national holidays, mail addressed to inmates ("Inmate Mail") is delivered to the Jail Monday through Saturday each week of the year." Williams further states that she does not "receive, process, distribute or otherwise handle Inmate Mail. Instead, other correctional officers who work at that Jail are responsible for receiving Inmate Mail, processing that mail, and delivering it to the appropriate inmate." Finally, Williams stated that she never received, handled or distributed any mail addressed to plaintiff, and never opened or searched any mail addressed to plaintiff. (Doc. 34, Williams Aff.)

Again, plaintiff has only unverified allegations in his complaint. Moreover, plaintiff did not allege any actual injury as a result of William's alleged unconstitutional actions. Therefore, his claims against Williams must fail.

It is therefore the RECOMMENDATION of the undersigned that the motion for summary judgment filed by defendants Atkinson, Williams, Story, and Griffin (Doc. 27) be **GRANTED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS of being served with a copy.

*Defendant Brown's Motion for Summary Judgment (Doc. 38)*

This motion is filed by defendant Dr. Brown, who is a physician who treats inmates at the Thomas County Jail. Plaintiff alleges that Dr. Brown gave him inadequate medical care in violation of his constitutional rights.

According to Dr. Brown's affidavits (Docs. 32 and 41), plaintiff was booked into the Thomas County Jail on May 21, 2009. The following day, plaintiff submitted a Prisoner Medical Request Form and was seen by Dr. Brown. During that visit, plaintiff reported a history of asthma, diverticulitis and back injury, and also complained of cold symptoms. Following a physical

7

examination, Dr. Brown prescribed Mintuss DR for treatment of plaintiff's cough and congestion, and Ibuprofen to treat his sore throat. (Doc. 41 Brown Aff). The staff requested plaintiff's medical records from Primary Care of Southwest Georgia. (Doc. 34, Williams Aff.)

On May 28, 2009, plaintiff submitted a Prisoner Medical Request Form on which he complained of blood in his stool and a sore throat. (Doc. 32 Brown Aff., ¶12; Exh. B.) On May 29, 2009, Dr. Brown examined plaintiff's medical records that were requested from Primary Care. Those records showed that plaintiff had a prior hospitalization for diverticulitus and a history of asthma, hypertension and back pain. (Doc. 32 Brown Aff., ¶14.) Thereafter, Dr. Brown examined plaintiff and noted that plaintiff had throat pain and swollen lymph nodes. (Doc. 32 Brown Aff., ¶ 13.) After examining plaintiff on May 29, 2009, Dr. Brown treated plaintiff's back pain with a prescription for Robaxin, which is a muscle relaxer, and Ultram, which is a non-narcotic pain medication. (Doc. 32 Brown Aff., ¶ 15.) Dr. Brown also issued a prescription for Bentyl to treat plaintiff's diverticulitis. (Doc. 32 Brown Aff., ¶ 15.) In addition, Dr. Brown prescribed Amoxil, which is an antibiotic, to treat plaintiff's upper respiratory infection and Mintuss DR to treat plaintiff's cough and congestion. (Doc. 32 Brown Aff., ¶15.) Finally, Dr. Brown began Albuterol treatment to prevent an exacerbation of plaintiff's asthma. (Doc. 32 Brown Aff., ¶15.)

On June 5, 2009, plaintiff submitted another Prisoner Medical Request Form in which he complained of a sore throat and blood in his stool. (Doc. 32 Brown Aff., ¶ 16; Exh. C.) Plaintiff also complained that he wore prescription glasses and Jail officials would not permit his family to deliver glasses to him. (Doc. 32 Brown Aff., ¶ 16.) During that visit, Dr. Brown provided plaintiff with a container to collect a stool sample for testing. (Doc. 32 Brown Aff., ¶ 16.) In addition, Dr. Brown issued a prescription for Ibuprofen for treatment of plaintiff's throat inflammation and pain, and a prescription for Mintuss DR for treatment of congestion. (Doc. 32 Brown Aff., ¶17.)

On June 8, 2009, plaintiff filed another Prisoner Medical Request Form on which he complained of abdominal pain. (Doc. 32 Brown Aff., ¶ 18.) Dr. Brown examined plaintiff the following day and noted that plaintiff's stool sample was positive for blood. (Doc. 32 Brown Aff., ¶18.) To treat plaintiff for an apparent flair up of his diverticular disease, Dr. Brown prescribed Metronidazole and recommended that plaintiff return for reexamination in 10 days. (Doc. 32 Brown Aff., ¶ 19.)

On June 11, 2009, plaintiff submitted a Prisoner Medical Request Form on which he complained of constipation and a bone sticking through his right jaw. (Doc. 32 Brown Aff., ¶ 20.) As a result of those complaints, plaintiff was examined by Dr. Brown the following day. (Doc. 32 Brown Aff., ¶ 21.) During that examination, Dr. Brown noted that plaintiff had no broken teeth, but did have slight swelling of the right side of his face. (Doc. 32 Brown Aff., ¶ 21.) Dr. Brown also noted tenderness in excess of expectations during his examination of plaintiff's abdomen. (Doc. 32 Brown Aff., ¶ 21.) Following examination, plaintiff's constipation was treated with a prescription for Bisacodyl and Dr. Brown prescribed Cleocin for treatment of a possibly abscessed tooth. (Doc. 32 Brown Aff., ¶ 22.)

On June 19, 2009, plaintiff returned to Dr. Brown for a check on the progress of his bloody stool and complaints of tooth pain. (Doc. 32 Brown Aff., ¶ 23; Exh. F.) During that visit, Dr. Brown noted that plaintiff had a sensitive molar in his upper right jaw, but no visible tooth decay. (Doc. 32 Brown Aff., ¶ 23.) Dr. Brown treated plaintiff's tooth pain with a prescription for Oragel. (Doc. 32 Brown Aff., ¶ 23.) During that visit, plaintiff informed Dr. Brown that his bloody stools had not gotten worse, but had not resolved. (Doc. 32 Brown Aff., ¶ 23.)

On June 29, 2009, plaintiff submitted another Prisoner Medical Request Form on which he complained of chest pain. (Doc. 32 Brown Aff., ¶ 24; Exh. G.) The following day, plaintiff was seen

by Dr. Brown. (Doc. 32 Brown Aff., ¶ 24.) At the time of the visit, plaintiff was not experiencing any pain; however, he reported a history of mitral valve prolapse. (Doc. 32 Brown Aff., ¶ 24.) During an examination, Dr. Brown noted that plaintiff's cardiac auscultation was normal, but his blood pressure and pulse were elevated. (Doc. 32 Brown Aff., ¶ 24.) Following examination, Dr. Brown instructed plaintiff to follow-up with the nurse for a recheck of his blood pressure. (Doc. 32 Brown Aff., ¶ 24.) In addition, Dr. Brown increased plaintiff's pain medication (Ultram) and renewed the Dicyclomine that plaintiff was taking for treatment of diverticular disease, as well as the Robaxin that was prescribed for plaintiff's muscle spasms. (Doc. 32 Brown Aff., ¶ 25.)

On July 6, 2009, plaintiff submitted a Prisoner Medical Request Form on which he complained of pain in his chest with exercise and he was seen by Dr. Brown on the following day. (Doc. 32 Brown Aff., ¶ 26; Exh. H.) During that visit, plaintiff was not experiencing any chest pain and a cardiac examination did not reveal any abnormality. (Doc. 32 Brown Aff., ¶ 26.) Because he was of the opinion that transient blood pressure elevations could have been the cause of plaintiff's intermittent chest pain, Dr. Brown prescribed an antihypertensive medication. Dr. Brown also recommended that plaintiff avoid exercise and follow-up with a cardiologist upon his release, which was scheduled to take place within 8 days. (Doc. 32 Brown Aff., ¶ 27.)

It is well established that prison personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97 (1976). However, "[m]ere incidents of negligence or malpractice do not rise to the level of constitutional violations." Acts or omissions must involve the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25 (1993). In the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the

conscience of mankind." In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. "It is......true that when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." *McElligott v. Foley*, 182 F.3d 1248, 1256-1257 (11th Cir. 1999).

The medical care provided to an inmate must be reasonable. *Patterson v. Riddle*, 407 F. Supp. 1035 (E.D. Va. 1976). However, "it is not required that the medical care provided to the inmate be perfect, the best obtainable, or even very good." *Estelle*, 429 U.S. at 106. *See also Harris v. Thigpen*, 941 F.2d 1495, 1510 (11th Cir. 1991); *Brown v. Beck*, 481 F. Supp. 723, 726 (S.D. Ga. 1980); *Hawley v. Evans*, 716 F. Supp. 601, 603 (N.D. Ga.1989).

The Eleventh Circuit has noted that, "where a prisoner has received medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." *Murphy v. Turpin*, 159 Fed. Appx. 945 at fn. 4, (11th Cir. 2005), citing *Hamm*, 774 F.2d at 1575. "Thus, where an inmate receives medical care, but desires a different mode of treatment, the care provided does not amount to deliberate indifference." *Id.*

In *Estelle v. Gamble*, *supra*, the Supreme Court cautioned that not every allegation of inadequate medical treatment states a constitutional violation. *Estelle* at 105. Mere negligence in diagnosing or treating a medical condition is an insufficient basis for grounding liability on a claim of medical mistreatment under the Eighth Amendment. *Id.* at 106 (stating "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"). A section 1983 claim, therefore, "does not lie if a prisoner's complaint is directed at the wisdom or quality of the

medical treatment he received in prison, even if that treatment is so negligent as to amount to medical malpractice." *Brinton v. Gaffney*, 554 F.Supp. 388, 389 (E.D.Pa.1983).

"The question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court." *Estelle, supra*, at 107.

As summarized above, defendant Dr. Brown has submitted medical records and his affidavit in support of his motion for summary judgment. Plaintiff has not responded to the properly supported motion for summary judgment. Plaintiff's complaint contains vague and conclusory allegations of inadequate medical care, which cannot overcome the evidence that has been submitted by defendant that he was not deliberately indifferent to plaintiff's medical needs. Accordingly, defendant Dr. Brown is entitled to summary judgment.

Therefore, it is the RECOMMENDATION of the undersigned that the motion for summary judgment (Doc. 38) filed on behalf of defendant Dr. Brown be **GRANTED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy.

**SO RECOMMENDED**, this 8th day of July, 2010.

S// Thomas Q. Langstaff<br>
THOMAS Q. LANGSTAFF<br>
UNITED STATES MAGISTRATE JUDGE

msd